Bobby E. McMEENS and Christian Corral Ranch for Girls, Appellants,

v.

Earl PEASE and Charles Pease, Both Individually and as Co–Independent Executors of the Estate of George W. Stain, Deceased, Appellees.

No. 13–92–648–CV.

Court of Appeals of Texas, Corpus Christi.

March 24, 1994.

Rehearing Overruled May 12, 1994.

George H. Spencer, Jr., Russell Wilson, Clemens & Spencer, San Antonio, for appellants.

Houston Munson, III, Houston Munson, Munson, Burns, Munson & Munson, Gonzales, for appellees.

Before SEERDEN, GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellees sued appellants to set aside a deed on grounds of fraud and undue influence and to establish title by adverse possession. A jury found against appellants. By six points of error, appellants contend that the jury's findings are either unsupported by the evidence or against the overwhelming weight and preponderance of the evidence, and that the trial court erred by denying appellants' motion for instructed verdict. We affirm in part and reverse and render in part.

On October 11, 1972, George W. Stain conveyed a 260–acre tract of land located in Gonzales County, Texas, by deed, to Christian Corral, a non-profit corporation created and operated by McMeens. Stain died on

July 6, 1987, and appellees filed suit on August 31, 1987. A jury found 1) that appellants obtained Stain's signature on the deed by means of fraud and undue influence, 2) that appellees obtained title by adverse possession to a 12–acre tract of land, and 3) that Stain did not unreasonably delay in asserting his rights against appellants. The trial court denied appellants' motion for instructed verdict, motion for judgment *non obstante veredicto,* and motion to disregard jury findings. On appeal, appellants reassert their defense of limitations and raise legal and factual sufficiency points.

Appellees claim that, as consideration for the conveyance, McMeens promised to take care of Stain for the rest of his life and to build the Christian Corral Ranch for Girls on the property. Stain executed the deed on October 11, 1972, and the deed was thereafter filed for record in Gonzales County. The deed conveyed twelve acres of land in fee simple to Christian Corral. Stain reserved a life estate in the remaining 248 acres of land, with the remainder going to Christian Corral upon Stain's death.[1] The girls' home was to be physically located on the 12–acre tract.

A dispute arose between Stain and McMeens sometime during mid–1973. As a result of that dispute, McMeens discontinued work on the ranch and left the premises.[2] Appellees contend that the parties later agreed to transfer the property back to Stain.[3] However, McMeens did not reconvey the property prior to Stain's death. McMeens did not demand possession of the land until after Stain died. Appellees submit that they did not discover the existence of the deed or the falsity of McMeens' representations until after Stain's death.

By their first and second points of error, appellants complain that there is no evidence, or alternatively, insufficient evidence to support the jury's answers to Questions 2 and 4.

When we review the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

When we review the factual sufficiency of the evidence or an "insufficient evidence" point, we consider, weigh and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

The jury answered Questions 2 and 4 as follows:

**Question No. 2**

By what date, if any, should George Stain, in the exercise of reasonable diligence, have discovered the fraud of Bobby McMeens? Answer with a date, if any, in the blank below:

Answer: <u>Never</u>

**Question No. 4**

By what date, if any, should George Stain, in the exercise of reasonable diligence, have discovered the undue influence

---

1. Appellees' originally alleged title by adverse possession to all 260 acres. At trial, appellees abandoned their adverse possession claim on the 248–acre tract, but maintained their claim of adverse possession on the 12–acre tract.

2. Even though the record is not clear, it appears that the dispute concerned the running of a water line across the 248–acre tract of land to provide sufficient water to the home on the 12–acre tract.

3. A letter, dated December 10, 1973, was offered by the appellees and admitted into evidence. According to the letter, McMeens' attorney informed Stain of the benefits of making the transfer of land to a qualified charitable organization. If the transfer was made to a qualified charitable organization, gift tax would not have to be paid and Christian Corral could maintain its tax status.

of Bobby McMeens? Answer with a date, if any, in the blank below:

Answer: <u>Never</u>

Appellants contend that by exercising reasonable diligence, Stain should have discovered the alleged fraud and undue influence no later than 1974, and that the verdict and rulings of the trial court to the contrary are erroneous and unsupported by the evidence.

### Fraud

■ A cause of action for fraud accrues upon its discovery, *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438, 440 (1940), or from the time the fraud might have been discovered through the exercise of reasonable diligence. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981); *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943). Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with reasonable diligence, would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law. *Bush v. Stone*, 500 S.W.2d 885, 889 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.) (*citing Ruebeck v. Hunt*, 176 S.W.2d 738); *See Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876 (1962). "The defrauded party must be cognizant or aware of facts as would have caused the ordinarily intelligent and prudent man to investigate." *Bush*, 500 S.W.2d at 889.

■ Stain conveyed the 260–acre tract of land to Christian Corral in 1972. Appellees claim that, as consideration for the conveyance, McMeens promised to take care of Stain for the rest of his life and to build the Christian Corral Ranch for Girls on the property. Appellees concede that McMeens failed to perform the consideration allegedly promised "shortly after the execution of the deed in 1972" when McMeens left Stain alone and without care.

Charles Pease testified that Stain knew sometime during late 1973 or early 1974, that McMeens was not going to take care of him

and that the girls' home was not going to be built and operated on the property. He also testified that, in April 1973, he visited Stain and found McMeens and a crew at work remodeling the old two-story house located on the 12–acre tract. Stain resided on the larger 248–acre tract. McMeens was given access to Stain's checking account and was allowed to withdraw whatever funds he needed for the renovation. During a second visit, sometime during October or November of 1973, Pease learned that Stain no longer allowed McMeens to withdraw funds from his checking account, that McMeens' name had been removed from the bank signature card, that Stain had "ran them off" the property, and that the home for girls was "not going to be."

Charles Stain, a nephew of the decedent, also testified that Stain had a change of heart during late 1973 or early 1974. Charles testified that his uncle was upset at how "nothing had gone like he had planned it," that he wanted no part of the agreement that he had with McMeens, and that he had "run them off."

Joe Watson testified that Stain had changed his mind about McMeens and that Stain did not want to give McMeens anything because McMeens had not lived up to what he had told Stain.

The evidence also shows that in 1983, ten years after he executed the deed, Stain was still aware of his dealings with McMeens and Christian Corral, that McMeens was not taking care of Stain at that time, and that Stain may have leased the old two-story house on the 12–acre tract to a temporary tenant.[4] As Stain grew older and became ill, individuals other than McMeens took care of him.

Doug Dinman testified that he cared for Stain until his death in July 1987.[5] Between the years 1973 and 1987, McMeens was not seen on the property and did not take care of Stain as he allegedly promised.

Stain was aware, as early as 1973, that McMeens was not going to fulfill his prom-

---

4. The lease, if executed, was not admitted into evidence.

5. Stain executed a will on June 4, 1986. The will bequeathed nothing to McMeens or Christian Corral and appointed appellees as co-independent executors.

ises. Stain died on July 6, 1987, and appellees filed suit on August 31, 1987. For approximately fourteen years, Stain knew or should have known of such facts as would have caused the ordinarily intelligent and prudent person to make inquiry which would have led to the discovery of the alleged fraud. "Such knowledge is in law knowledge of the fraud itself." *Wise,* 359 S.W.2d at 879 (lessor's knowledge that no well had been commenced within time prescribed for drilling was "knowledge of facts which would cause a reasonably prudent person to make inquiry" and constituted knowledge of fraud).

■ Evidence of fraud may be disclosed by the examination of public records containing a recorded deed. *Mooney,* 622 S.W.2d at 85; *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319, 321 (1941). The deed in this case was filed for record in Gonzales County in October 1972. We find no harshness in holding that a grantor, executing a transfer of land, is charged with knowledge of the conveyance made to the grantee.

We disagree with appellees' contention that the diligence required on the part of Stain does not require as prompt or searching an inquiry into the conduct of McMeens as when the parties are strangers or are dealing at arms' length. Although a confidential relationship may be shown outside of the usual case of partnership, attorney-client, or family relationships and may in fact arise informally from moral, social, or personal relationships, the facts of this case do not indicate the existence of a fiduciary relationship so as to allow a more lenient application of the discovery rule. *Cf. Richard Gill Co. v. Jackson's Landing,* 758 S.W.2d 921, 924 (Tex.App.—Corpus Christi 1988, *writ denied* ); *Bush,* 500 S.W.2d at 890; *Tuttlebee v. Tuttlebee,* 702 S.W.2d 253, 256–57 (Tex. App.—Corpus Christi 1985, no writ).

Stain knew or should have known of facts which would have caused the ordinarily intelligent and prudent person to make inquiry which would have led to the discovery of the alleged fraud in 1973. We find the evidence to be legally and factually insufficient to support the jury's finding that Stain would **never** "have discovered the fraud of Bobby McMeens." We conclude that the jury's

finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong.

■ A claim of fraud or misrepresentation is a claim for a debt, and as such, is governed by the applicable statute of limitations. *Williams v. Khalaf,* 802 S.W.2d 651, 654 (Tex.1990). Prior to 1979, the two-year statute of limitations, TEX.REV.CIV.STAT.ANN. art. 5526, applied. Since the facts giving rise to the cause of action in the instant case all occurred prior to 1979, we hold that the two-year statute of limitations (now codified in its amended form as TEX.CIV.PRAC. & REM.CODE ANN. § 16.003) applies to appellees' fraud cause of action. *See Williams,* 802 S.W.2d at 654; *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762 (Tex.1987); *Mooney,* 622 S.W.2d at 85. We, therefore, hold that appellees' action to set aside the deed because of McMeens' alleged fraud is barred by limitations.

## UNDUE INFLUENCE

The record reflects that Stain suffered from poor eyesight and poor hearing and that in 1966, Stain conveyed ½ of a royalty interest when he intended to convey only ¼ of his royalty interest. Appellees contend that because of Stain's lack of education, old age, and history of misunderstanding the nature of property transactions, appellants undoubtedly exerted undue influence over him. The record also indicates that McMeens secured the services of the attorney who prepared the deed.

■ In Texas, undue influence is considered a species of fraud and may be exercised through threats or fraud or by influence of the strong over the weak. *Curry v. Curry,* 153 Tex. 421, 270 S.W.2d 208, 214 (1954); *Finch v. McVea,* 543 S.W.2d 449, 452 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). While age and physical condition of a person are important in determining whether he was subjected to undue influence, such factors alone are insufficient to raise the presumption of undue influence. *Rothermel v. Duncan,* 369 S.W.2d 917, 923 (Tex.1963). *See Curry,* 270 S.W.2d at 212 (circumstances

failed to give rise to a reasonable inference that deed was product of undue influence).

The record reflects that Stain was aware of the facts giving rise to the claim of undue influence as early as 1973. We have shown above that the evidence does not support appellees' claim of fraud. For the same reasons, the evidence does not support the legal conclusion of undue influence. *Curry,* 270 S.W.2d at 214.

Stain knew or should have known of facts which would have caused the ordinarily intelligent and prudent person to make inquiry which would have led to the discovery of the alleged undue influence in 1973. We find the evidence to be legally and factually insufficient to support the jury's findings that Stain would **never** "have discovered the undue influence of Bobby McMeens." We conclude that the jury's finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong.

Stain executed the deed on October 11, 1972, and the deed was thereafter filed for record in Gonzales County. Appellees are charged with constructive notice of the recorded deed. *Mooney,* supra; *Sherman,* supra. *See Veltmann v. Damon,* 696 S.W.2d 241, 243–44 (Tex.App.—San Antonio 1985), *rev'd and remanded in part on other grounds,* 701 S.W.2d 247 (Tex.1986) (per curiam).

■ A suit to set aside a deed for undue influence is not a suit to recover real estate; it is a suit of a personal nature and must be brought within four years of its accrual pursuant to Tex.Rev.Civ.Stat.Ann. art. 5529 (now codified in its amended form as Tex.Civ. Prac. & Rem.Code Ann. § 16.051). *Veltmann,* 696 S.W.2d at 244.

Stain died on July 6, 1987. Appellees filed suit on August 31, 1987, fourteen years after the deed was executed and filed for record. We, therefore, hold that appellees' action to set aside the deed because of McMeens' alleged undue influence is barred by limitations. We sustain appellants' first and second points of error.

By their sixth point of error, appellants raise a factual sufficiency challenge to the jury's finding that Stain did not unreasonably delay in asserting his claim. For the reasons discussed under appellants' first and second points of error, we sustain appellants' sixth point of error.

By their fifth point of error, appellants contend that the trial court erred in denying appellants' motion for instructed verdict as to the plaintiffs' claim to title by adverse possession to the 12–acre tract of land. This point is not preserved for review.

■ Appellants moved for an instructed verdict at the close of plaintiffs' case, and the motion was overruled. Since appellants proceeded with the trial, put on evidence, and did not reurge the motion for instructed verdict at the close of the case, appellants have waived their motion. *Bryan v. Dockery,* 788 S.W.2d 447, 449 (Tex.App.—Houston [1st Dist.] 1990, no writ). Appellants did not attack the jury's finding on this issue in their "Motion for Judgment *Non Obstante Veredicto* or, Alternatively, to Disregard Jury Findings," nor did they raise these points on appeal. *Cf. Sipco Serv. Marine v. Wyatt Field Serv.,* 857 S.W.2d 602 (Tex.App.—Houston [1st Dist.] 1993, no writ) (appellant did not preserve error on motion for directed verdict, but did preserve error on judgment notwithstanding the verdict). We overrule appellants' fifth point of error.

Due to our disposition, it is unnecessary to discuss appellants' remaining points of error. *See* Tex.R.App.P. 90(a).

The judgment of the trial court is AFFIRMED as to the 12–acre tract of land and REVERSED AND RENDERED in favor of appellants as to the 248–acre tract of land.